[Civil No. 1683. Filed June 4, 1919.]

[181 Pac. 369.]

R. J. SHEA and M. P. SHEA, Doing Business Under the Firm Name and Style of T. J. SHEA'S SONS COMPANY, Appellants, v. S. B. WOOD, Appellee.

1. LANDLORD AND TENANT—IMPLIED CROPPER'S CONTRACT—CREATION.—Under pleading and answer in a suit showing, among other things, that defendant entered on land of plaintiff under contract to put in milo maize crop with division of crop, and that defendant, with knowledge of plaintiff's foreman, contrary to expectation of plaintiff, planted maize between rows of cotton left standing on the land, that defendant did not claim the cotton, but did claim services and money spent in caring for cotton, *held* to authorize the court to presume that as to the cotton defendant was impliedly a cropper and not a tenant.

    [As to cropping contracts, see note in 98 **Am. St. Rep.** 955.]

2. LANDLORD AND TENANT — IMPLIED CROPPER'S CONTRACT—TERMINATION.—An implied cropper's contract in relation to cotton cared for by having contract with owner of land to put in milo maize crop may be terminated by owner at any time.

3. LANDLORD AND TENANT—IMPLIED CROPPER'S CONTRACT—RIGHTS OF PARTIES.—On termination by owner of an implied cropper's contract in relation to cotton cared for by one having contract with owner of land, to put in milo maize crop, owner by implication promised to pay cropper reasonable value of services rendered and charges paid for water not furnished by owner.

4. SETOFF AND COUNTERCLAIM — IN INJUNCTION SUIT—COUNTERCLAIM FOR SERVICES—IMPLIED CROPPER'S CONTRACT.—In suit to enjoin

harvesting of cotton by cropper under contract to put in maize crop, facts showing an implied cropper's contract as to the cotton, defendant-cropper could counterclaim for services rendered in caring for cotton and charges paid for water which owner should have paid.

5. APPEAL AND ERROR—DETERMINATION OF CAUSE—FAILURE TO SUBMIT REAL ISSUES—NEW TRIAL.—Where pleading and answer in suit to enjoin harvesting of cotton established an implied cropper's contract as to cotton based on facts that defendant entered plaintiff's land under contract to put in milo maize crop, and he planted maize between rows of cotton which had been left standing on the land, but the real issue between the parties, namely, whether defendant cultivated the cotton at all, or, if he did, amount of compensation therefor and adjustment of account for water charges paid by defendant, were not submitted, cause will be remanded for trial of those issues; answers to the interrogatories being conflicting and verdict not responsive.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Reversed and remanded, with instructions.

### STATEMENT OF FACTS BY THE COURT.

The appellants and appellee entered into a contract on the eighteenth day of July, 1917, in words and figures following:

"Glendale, Ariz. July 18, 1917.

"It is hereby understood and agreed upon between T. J. Shea's Sons Company, herein known as the party of the first part, and S. B. Wood, herein known as the party of the second part, that said parties of the first part shall furnish to said party of the second part 40 acres, more or less, of land on K avenue, between laterals 17 and 18, to raise a crop of milo maize. Said parties of the first part to furnish seed and water required to bring crop to maturity and to bear one-half of threshing expense. Said parties of the first part are to receive one-half of grain produced under this contract.

"The said party of the second part agrees to plant, irrigate and cultivate this crop and to give same personal care and effort to bring said crop into full production and maturity and to bear one-half of the threshing expense. Said party of the second part to receive one-half of grain produced under this contract."

Duly signed by the parties.

The possession of the land was delivered to Wood about the date of the said agreement. At the time Wood took possession, an inferior crop of cotton was growing on the land. The plaintiffs expected that the crop of cotton would be plowed out and a crop of milo maize planted instead of the cotton. The cotton was not plowed up, but the milo maize was planted between the rows of cotton. So planted, Wood paid for water and cultivated the land with two crops growing in alternative rows, a row for cotton and a row for milo maize.

The Shea's foreman saw the two crops growing; and they knew that the cotton was not plowed up, but left to grow as planted.

On November 5, 1917, this action was commenced, praying an order against Wood, enjoining and restraining him from gathering any part of said cotton, alleging that he had commenced to gather such crop and appropriate the same to his own use. The plaintiffs praying for a recovery of the value of the cotton thus harvested by Wood, and for general relief. The temporary injunction was granted.

The defendant demurred on the ground that the facts stated do not entitle the plaintiffs to the relief demanded. He answered by admitting the contract of July 18, 1917; the planting of the milo maize and the cultivation of both crops; the purchase of water for the irrigation of the crops. And he ''further alleges that he has managed and cultivated said premises at all times in a good and husbandlike manner, and that he has managed the cultivation of all crops growing on said land for the purpose of conserving the same and for the benefit of plaintiffs and defendant herein.'' The defendant prays the dismissal of the complaint and injunction, and a judgment declaring his ownership in the cotton crop, and damages for plaintiffs' interference with his progress of the work.

The court overruled defendant's demurrer, and the action was tried before the court with a jury. Special interrogatories were submitted to the jury, and upon the answers returned to a portion of said interrogatories and further finding of fact, the judgment was entered for the defendant for $500 and costs. The plaintiffs appeal from the order refusing a new trial and from the judgment.

Messrs. Cox & Moore, for Appellants.

Messrs. Gandy & Cunningham, for Appellee.

CUNNINGHAM, C. J. (After Stating the Facts as Above).—The plaintiffs assert their possession of the cotton in question as it stands on the ground, for the reasons that the cotton was cultivated and irrigated from July 18, 1917, when the land was delivered to the defendant under a cropper's contract. The written contract between the parties concerns only a milo maize crop to be planted on the same ground on which the cotton was then growing. The plaintiffs allege:

"Par. 5. That defendant did not plant and cultivate said crop of milo maize in a husbandlike manner, nor did he cultivate said crop of maize as provided and contemplated by said agreement, but allowed said cotton to stand and continue to grow, and without cultivation thereof a large part of said cotton which had been planted and cultivated by plaintiffs grew to maturity, and that there is now on said land a large and valuable crop of cotton which belongs to the plaintiffs, and in which defendant has no right, title, or interest."

Paragraph 6, briefly referred to, sets forth that the defendant has commenced harvesting the said cotton, and that the plaintiffs have "forbidden defendant to go on said premises for said purpose of picking said cotton, and has notified him not to interfere with plaintiffs' cotton crop."

Paragraph 7 admits:

"That *defendant has a lease* on said lands for the purpose of raising, cultivating, and gathering said crop of milo maize, . . . and that although plaintiffs notified defendant not to molest or interfere with said cotton, defendant has thereafter in disregard of said notice, and of plaintiffs' rights in said property, continued to gather said cotton and appropriate same to his use, and threatens to continue gathering same . . . unless restrained by this court. . . ."

The plaintiffs demand relief: First, an accounting for the cotton defendant has converted by harvesting; a restraining order preventing defendant from harvesting other of the cotton; for costs; and for general relief. The milo maize contract is annexed to the complaint.

The defendant admits the making of the milo maize agreement; admits his possession under the agreement; denies its

breach as alleged by plaintiffs; alleges that he planted the
milo maize crop as agreed; alleges that plaintiffs failed to
furnish irrigating water as they agreed, and the defendant
was compelled, by such failure to, and he did, purchase and
pay for the water; admits "that at the time of the entry of
this defendant into and upon the said premises there was
standing on said premises cotton which this defendant did not
disturb, and which plaintiffs had expressly abandoned, and
that the milo maize was planted along and between the rows
of said cotton."

The defendant alleges that he has cultivated said milo maize
crop in a husbandlike manner, "according to the course and
practice followed by the ranchers in the community, and that
there is now growing upon said premises a crop of milo maize
not yet matured; and defendant therefore alleges that by
reason of the failure of the said plaintiffs to carry out and
perform their part of the contract hereinabove referred to,
which were on their part to be performed, this defendant has
and does claim the right, title, and interest in and to the said
cotton now upon said premises by reason of irrigating and
cultivating the same."

The defendant alleges that he expects to account for the
cotton harvested by him "at the outcome of this suit," and
he "further alleges that he has managed and cultivated said
premises at all times in a good and husbandlike manner, and
that he has managed the cultivation of all crops growing on
said lands for the purpose of conserving the same and for
the benefit of plaintiffs and defendant herein."

The defendant claims damages by reason of plaintiffs' in-
terference with the cultivation of said land and the crops
growing thereupon, and by reason of the stopping of said
work on account of said injunction heretofore issued, in the
sum of $500. He prays that the injunction be dissolved;
that he be decreed to be the owner of said crop of cotton;
that he recover judgment for said $500, together with costs.

The plaintiffs, in brief, contend in their pleadings that,
because the defendant did not plow out the cotton he found
growing on the land and plant the land exclusively to milo
maize, the cotton growing on the land, having been planted
by the plaintiffs and cultivated by them to the time the land
was delivered to the defendant, said cotton remained the

property of plaintiffs, and was cultivated and irrigated on the implied promise of compensation.

The defendant, on the identical state of facts, contends that he continued the cultivation of the cotton to preserve the crop for the benefit of plaintiffs and of the defendant, expecting to account for the same. The defendant makes no claim to a specific share of the cotton grown, nor does he claim a specific interest in the cotton grown, either as compensation for his services and money expended by him for water, or as a portion of the crop. He certainly does not admit his liability to pay the plaintiffs' rent out of the cotton, nor does he claim the right to the cotton by reason of a lease of the land and payment of rent under such lease. A careful study of the pleadings discloses that the defendant does not deny that the plaintiffs have some just claim against the cotton crop. The defendant, in the eighth paragraph of his answer, says:

" . . . That he has managed the cultivation of all crops growing on said land for the purpose of conserving the same for the benefit of plaintiffs and defendant herein."

This is not inconsistent with the plaintiffs' claim that the defendant managed the cotton crop as a "cropper" of the plaintiffs.

Mr. Freeman, in his note to *Putnam* v. *Wise,* in 37 Am. Dec. 309, page 320, quotes the definition of "croppers" found in *Fry* v. *Jones,* 2 Rawle (Pa.), 11, as follows:

"If one hires a man to work his farm, and gives him a share of the produce, he is a cropper. He has no interest in the land, and receives his share as the price of his labor." *Fry* v. *Jones,* 2 Rawle (Pa.), 11.

Commenting on this statement, Mr. Freeman says:

"That is to say, if the general possession of the land remains in the owner, and the occupant cultivates it for a share of the produce as compensation, he is a cropper. The question then, in every case, of cultivation of land on shares is, Does the contract give the owner his share as rent, or the occupant his share as compensation? If the former, according to the cases above cited, the occupant is a tenant; if the latter, he is a cropper"—citing cases.

The defendant does not allege that he is obligated to pay rent for the cotton; in fact, he, in effect, denies that he is

liable to plaintiffs for rent for the cotton, yet he admits that
whatever he did to conserve the cotton was done by him for
the benefit of both parties. From this and from the plain-
tiffs' claim, we must presume, as to the cotton crop, that the
defendant was a cropper because he does not deny the rela-
tion, and as an incident to that relation, the plaintiffs had the
legal possession of the cotton crop and retained the right to
bring the "cropper's contract" relation to an end at any time
they desired. They did bring said contract to an end on the
second day of November, 1917, when they notified the defend-
ant to cease gathering cotton. Defendant's further services
were dispensed with by such notice.

The cropper's contract in the circumstances of this case
arose by implication and by implication the plaintiffs prom-
ised to pay the defendant the reasonable value of his services
rendered between July 18, 1917, and November 2, 1917, in
conserving the cotton crop, if the alleged services were ren-
dered. Likewise, the plaintiffs are chargeable with the sum
paid by the defendant for water for irrigating the said crop
and the reasonable value of the labor necessary to irrigate
said crop, if, as a fact, the defendant paid for the water and
irrigated the cotton crop. These matters are the only mat-
ters presented that required a decision by the court. The
verdicts and judgment are not responsive to the issues here
presented for determination.

It is contended that the defendant has set up a counter-
claim, and the judgment in his favor allows his counterclaim.
Certainly, the defendant could properly set forth, and did
attempt to set forth, this claim for compensation and return
of the money paid by him for the plaintiffs; and it seems,
but is not decided, that by proper pleadings the matters of
damages relating to the milo maize contract may be deter-
mined in the same equitable action. But the record before
us in this case is in such a state of confusion, the confusion
arising from the pleadings, or want of pleadings, and from
the failure to take into consideration many seemingly im-
portant facts, that we are uncertain as to the equities of the
parties. It is clear that under no view of the facts in the
case which can be deducted from the record, can the defend-
ant justly retain $82, which he received for cotton, and not
account for the net value of the same. Neither does it ap-

pear from any theory of the case why the defendant is entitled to $400, allowed him in the judgment, one-half of the value of the cotton crop, when it is conceded that the plaintiffs have paid the expenses of harvesting the entire crop coming to their possession as a result of this suit. The total cotton crop, which includes both the portion harvested by plaintiffs and the portion harvested by Wood, is found to be of a value of $800. An accounting is necessary on any theory of the case presented by the evidence, even conceding that the parties are entitled to equal shares of all crops grown on the land.

The relation of the parties in every case where the evidence rests in parol must be determined from facts proven and a contract implied therefrom. Wherever such contract is fully established either by parol or by written evidence of its terms, a great deal yet depends upon the intention of the parties as to the relation between them. That is, whether the relation is that of master and servant, landlord and tenant, or partners. Of course, the contract must be enforced, and the rights of the parties thereunder must be determined in accordance with the kind of contract the parties have intended to make, and which is relied upon as defining their rights. The plaintiffs have set forth an implied cropper's contract, and the defendant has not controverted the existence of such contract, and has set forth his claim for compensation in the amount of one-half of the value of cotton produced. The plaintiffs claim all of the cotton, denying that defendant has contributed anything of value to its production, and hence the issue of facts is joined and presents the inquiry for determination whether the defendant cultivated the crop of cotton and purchased water and irrigated said crop; also the compensation due for cultivating the cotton crop and for purchasing water to irrigate such crop. Was his compensation reasonably worth one-half of the yield of cotton Such are the questions for determination with regard to the cotton crop.

The interrogatories submitted to the jury inquired, first, if the defendant found on the land a cotton crop abandoned by the plaintiffs; second, whether the plaintiffs intended to abandon the said cotton crop; third, whether the defendant properly cared for the maize crop; fourth, the value of the

cotton crop; fifth, the value of the milo maize crop. The first, second, and third interrogatories were answered by "yes"; the answer to the fourth stated that the cotton crop was of the value of $800, and the fifth, that the maize crop was of the value of $200.

Then follows interrogatory No. 6: "Is plaintiff entitled to the crop of cotton raised on the land?" answered, "Yes." Interrogatory No. 7: "Is defendant entitled to the crop of cotton raised on the said land?" answered, "Yes."

The appellants complain of these interrogatories, and while their complaint with regard to the five interrogatories first in order is rather indefinite, it is clear that the first, second and third presented no controverted question; that the fourth and fifth, finding the gross value of the two crops, were pertinent, but not decisive, of the case, and that the sixth and seventh submitted a question of law to the jury, and would have been reversible error if the court had not expressly declined to be influenced by the answers returned. As a fact, the answers returned nullified themselves, as evidently appears.

The principal complaint is that the controverted questions were not submitted to the jury, and from what we have said above, the objection is well taken. The vital inquiry was as to the reasonable value of the defendant's compensation for his said services rendered from July 18, 1917, to November 2, 1917, including the purchase price of the water, and irrigating the cotton crop. The plaintiffs seem to contend that defendant is entitled to no compensation because no services were rendered, and the defendant contends that he is entitled to at least one-half of the crop of cotton raised on the ground, as his just compensation. That controversy has not been settled; and, when it has been determined, the next question to follow will be an accounting for the other matters, including the cotton gathered and sold by defendant, together with other proper claims, to the end that complete justice be done and a multiplicity of lawsuits be avoided.

Justice requires that the judgment rendered be vacated, and the cause remanded, with instructions to the lower court to grant the plaintiffs a new trial of the questions of the amount of defendant's compensation, if any, in the premises, and to determine the state of accounts between the parties, as justice and equity require.

A consideration and discussion of the other questions raised by appellants becomes unnecessary, as we presume the errors, if any, will not be repeated on another trial.

Reversed and remanded.

ROSS and BAKER, JJ., concur.